IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TERENCE IGNACIO, | ) | Civ. No. 11-00516 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | ON ALL CLAIMS AND DENYING |
| COUNTY OF HAWAII, ET AL., | ) | PLAINTIFF'S THREE MOTIONS FOR |
| | ) | PARTIAL SUMMARY JUDGMENT |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON ALL CLAIMS AND
DENYING PLAINTIFF'S THREE MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

Plaintiff Terence Ignacio was formerly a police officer on probationary status with the Big Island of Hawaii's Police Department (the "Police Department").  Am. Compl., ECF No. 9. Ignacio is suing the Police Department and Police Chief Harry S. Kubojiri in his individual and official capacity (collectively, "Defendants") for having wrongfully terminated him after the Department conducted an internal investigation into his conduct. Id.  Ignacio alleges that, in terminating him, the Police Department failed to follow its internal complaint procedures (Counts I and II) and failed to abide by its collective bargaining agreement ("CBA") with the State of Hawaii Organization of Police Officers ("SHOPO") (Counts III and IV). Ignacio further alleges that Defendants engaged in "prohibited coercion and reprisal" (Count V) and failed to treat him fairly

(Count VI).  In addition, Ignacio asserts that, under the Police Department's internal complaint procedures and the SHOPO CBA, he was not an "at-will" employee (Count VII), and that the Police Department breached a duty of care it owed him (Count VIII). Finally, Ignacio alleges that Defendants violated his rights under the First, Fifth, and Fourteenth Amendments (Counts IX and X).

Currently before the court are Ignacio's motion for partial summary judgment on Counts I through IV, ECF No. 52, and Defendants' motion for summary judgment on all claims, ECF No. 57.  These motions mirror each other, at least with respect to Counts I through IV.  Ignacio also brings two motions for partial summary judgment that address defenses raised by Defendants.  ECF Nos. 54, 56.  This court grants summary judgment to Defendants on all claims, meaning that Ignacio's motion for summary judgment on Counts I to IV is correspondingly denied and his challenges to defenses fail.

II.      **BACKGROUND.**

Ignacio applied to be a police officer with the Police Department in late 2008.[1]  As a part of his application, Ignacio

_____

[1] Ignacio had applied to be a police recruit earlier that same year but allegedly failed to meet the Police Department's minimum requirements at that time.  See Police Department Memo re: Withdrawal/Reinstated Police Officer I Applicant.  ECF No. 89-6.  While Defendants refer to Ignacio's "rocky application process," Def.'s Mot. Summ. J. at 2, ECF No. 57, there is no evidence anywhere in the record that Ignacio's initial

signed a "Waiver of Liability and Release Form," authorizing the Police Department "to make a thorough investigation . . . for the purpose of determining [his] suitability for employment with the [P]olice Department." ECF No. 89-10.  He also "agree[d] to hold harmless and release from liability under any and all possible causes of legal action the Department, its officers, its employees, and its agents, for any statements, acts, or omissions in the course of its investigation into [his] background, family, personal habits, and reputation."  Id.

Ignacio began working as a "Police Officer I" on November 17, 2008.  See Am. Compl. ¶ 1, ECF No. 9.  From the time he began his employment, Ignacio was subject to the Police Department's Standards of Conduct, "whether on or off duty."  ECF No. 59-30.  Like all new police officers, Igancio was required to complete an 18-month initial probationary period before becoming a "regular employee."  See SHOPO Supplemental Agreement, ECF No. 59-6.  During this initial probationary period, Ignacio was "not entitled to any seniority or tenure rights" or to use the grievance or appeal procedure set forth in the SHOPO CBA.  Id.

While on probation, Ignacio received a "not acceptable" performance rating "in the areas of officer's safety, radio communications, and report writing and grammar."  Memo re: Extension of Field Training Officer Program, ECF No. 59-8;

_____

application played any role in his termination.

3

Ignacio Dep. at 174, ECF No. 59-9.  The Police Department extended Ignacio's probationary period for two months.  The Police Department said that, while the extension in the Field Training Program "should not be construed as a disciplinary action," it did "not preclude the department from taking action prior to the date of your extended [probation]; to include termination of employment from the [] Police Department should you not meet an acceptable level of performance."  Id.

There is no dispute that, on April 24, 2010, Ignacio called in sick for a shift that ran from 2:45 p.m. until 11:30 p.m.  Dep. of Terence Ignacio ("Ignacio Dep.") at 142, ECF No. 59-8.  It is also undisputed that, after dark that evening, Ignacio called his fiancee, Kaitlyn Ogi, and ended their engagement because he thought she was cheating on him with a man named Dennis Hollowell.  Id. at 51, 137, 142.  Ogi was at Hollowell's house that evening.  Id. at 137; see also Decl. of Dennis Hollowell ("Hollowell Decl.") ¶¶ 3-8, ECF No. 59-41; Decl. of Jodi Ferreira ("Ferreira Decl.") ¶¶ 4-11, ECF No. 59-39.

Hollowell and his housemate assert that, after one of their dogs began barking like "crazy" at some point between 10 p.m. and 11 p.m. that evening, Ogi and Hollowell received phone calls from Ignacio.  Hollowell Decl. ¶¶ 3-4; Ferreira Decl. ¶¶ 4-5.  See also Ignacio's Phone Records, ECF No. 59-28  After ending a call with Ignacio, Hollowell told his roommate, "I can

4

hear someone on the roof and I can hear the dogs barking over the phone. [Ignacio] is here." Ferreira Decl. ¶ 6.  The next day, Hollowell's roommate "noticed some dents in the roof" and thought that "[i]t looked like someone had walked on the roof." Id. ¶ 9.

Ignacio admits only that he drove past Hollowell's home on the evening of April 24, 2010.  Ignacio Dep. at 137.  He claims that after he passed Hollowell's house, he saw Ogi's car, then called Ogi to say that their relationship was over. Id. at 137.

On April 26, 2010, Ogi filed eight complaints against Ignacio with the Police Department alleging harassment, theft, and multiple counts of domestic violence.  See ECF Nos. 59-14, 59-15, 59-16, 59-17, 59-18, 59-19, 59-20.  The next morning, the Police Department issued a Complaint Report based on Ogi's eight allegations against Ignacio.  ECF No. 59-11.  That same day, Ogi obtained a temporary restraining order against Ignacio from the state court, ECF No. 59-22, and the Police Department placed Ignacio on a leave of absence without pay.  See ECF No. 59-23. The Police Department initiated both an Internal Affairs investigation and a criminal investigation.  Decl. of Harry Kubojiri ("Kubojiri Decl.") ¶ 14, ECF No. 59-39.  Ignacio was advised of his "right to review Article 12" of the SHOPO CBA and to have "the opportunity to consult with a union representative" when responding to the administrative investigation.  Kimura

Letter to Ignacio, ECF No. 9-1, Page ID # 170.  With respect to
the criminal investigation, Ignacio was instructed not to
interfere with the Police Department's work.  <u>See</u> Letter to
Ignacio from the Police Department, ECF No. 59-23.

The Internal Affairs investigation considered
information from a variety of sources, including Ogi's TRO,
Ignacio's phone records, the Police Department's database, and
interviews of at least thirteen witnesses, including Ignacio, who
was interviewed in the presence of a SHOPO representative.  Decl.
of Alan Kimura ¶ 9, ECF No. 59-37.  The investigation revealed,
among other things, that Ignacio had accessed the official Police
Department database and, while on duty, had searched for
Hollowell's name on three separate occasions with no legitimate
work-related reason.  Decl. of James B. O'Connor, ECF No. 59-42.

Internal Affairs completed its investigation and issued
a 250-page report on May 10, 2010.  Kubojiri Decl. ¶ 16, ECF No.
59-38.  That same day, the Police Department sent Ignacio a
letter terminating him at the close of the next business day for
the conduct described in the Police Department's Complaint
Report.  That conduct related to what Ogi had alleged.  ECF No.
59-32.  After Ignacio was terminated, the Police Department
"cleaned out his locker and discovered evidence which had not
been properly secured and logged.  As a result, [a second

Internal Affairs] investigation was initiated." Kubojiri Decl.
¶ 20, ECF No. 59-38.

Exactly one week after Ignacio's termination, he filed
an Internal Complaint seeking reinstatement with the Police
Department. ECF No. 59-29. Citing his rights under the SHOPO
CBA, which governed disciplinary proceedings, Ignacio also
requested access to the recording of his interview with Internal
Affairs, along with "copies of all documents, recordings, and
other things considered in the investigation of [his] case."
Letter to Kubojiri, ECF No. 59-33.

Exactly two weeks after Ignacio was terminated, he and
Ogi entered into a "settlement agreement." Ignacio Dep. at 173,
ECF No. 59-9. As part of the settlement agreement, Ogi "agreed
to withdraw the charges against [Ignacio] and dismiss the TRO."
Id. That same day, Ogi withdrew all eight complaints with the
Police Department, ECF No. 59-25, and Ignacio wrote Ogi a check
for $2,500. ECF No. 59-26.

On June 2, 2010, Chief Kubojiri replied to Ignacio's
letter seeking all materials relating to the Internal Affairs
investigation. Kubojiri Letter to Ignacio, ECF No. 59-34.
Kubojiri first informed Ignacio that, while Ignacio's letter
referred to the SHOPO CBA, the Police Department "terminated
[Ignacio's] initial probationary appointment as a Police Officer
I. Any characterization that the termination of your

probationary appointment was a disciplinary matter is incorrect."
Id. Kubojiri gave Ignacio a recording of his Internal Affairs
interview but declined to provide "other documents, recordings,
or other things considered as a part of the administrative
investigation concerning [Ignacio] pursuant to Hawai'i Revised
Statutes §§ 92F-13 and 92F-22." Id.

Chief Kubojiri wrote another letter to Ignacio on June
23, 2010, informing Ignacio about the second Internal Affairs
investigation. Kubojiri Decl. ¶ 21, ECF No. 59-38. Kubojiri
explained that it was standard procedure "for the Police
Department to investigate all acts of wrongdoing which occur
while a person is employed with the department, even if the
person no longer is employed." Id. ¶ 22. "This is particularly
important if the individual filed a grievance or appeal in an
attempt to be reinstated" because "[i]f the [Police Department]
failed to investigate and the person was reinstated, he/she would
not be held accountable for the wrongdoing." Id.

On August 25, 2010, Ignacio and his attorney met with
Kubojiri as part of a "mutual agreement to conditionally continue
the Step-III process of the Internal Complaint Procedures for the
purpose of determining whether additional information not
previously provided . . . [to Ignacio], could now be released."
Kubojiri Letter to Ignacio's Attorney, ECF No. 59-35. Kubojiri
reaffirmed "the termination of Mr. Ignacio's initial probationary

appointment as a Police Officer I" and maintained that the Police
Department had a "right to terminate" Ignacio.  Id.  Kubojiri
explained:

> An appointing authority has the right to
> terminate employees, including "non-Civil
> Service employees," when the good of the
> service will be served.  The law clearly
> states that "no employee shall be entitled to
> membership in civil service until the
> employee has [ . . .] [s]uccessfully
> completed the initial probation period as
> required as part of the examination process
> to determine the employee's fitness and
> ability for the position[.]" . . . Your
> attempt to characterize Mr. Ignacio's
> termination as a disciplinary matter is
> incorrect and without merit.
>
> For an employee who is not yet a Civil
> Service employee, an appeal would not be
> within the jurisdiction of the County's Merit
> Appeals Board and the Mayor's decision on
> such an appeal would be final and binding.

Id.

Ignacio subsequently filed an appeal with the Merit
Appeals Board (the "Board").  Kubojiri Decl. ¶ 27, ECF No. 59-38.
Chief Kubojiri explained to the Board that the Police Department
could not give Ignacio all the materials that Internal Affairs
had considered in terminating Ignacio because of an ongoing
criminal investigation relating to Ignacio's actions.  Board Tr.
at 896, ECF No. 59-44.  After the hearing, the Board issued its
Findings of Fact, Conclusions of Law, and Order Denying Appeal.
See Merit Appeals Board Order, ECF No. 9-3.  The Board found that
Chief Kubojiri, after reviewing the Internal Affairs

9

investigative report, had concluded that Ignacio had not been
truthful.  Board Order ¶ 22, ECF No. 9-3.  The Board also found
that Kubojiri "had concerns about [Ignacio's] credibility"
because some things Ignacio said in his Internal Affairs
interview were "contradicted by other information uncovered by"
the Internal Affairs investigation.  Id. ¶ 23.  Finally, the
Board accepted as true Kubojiri's statement that credibility was
essential for police officers because an officer with a
reputation for not being credible  reflected on the Police
Department as a whole.  Id. ¶ 24.  Specifically, the Board
believed that Kubojiri was concerned that Ignacio had lied in
saying that he did not know Hollowell, whose records, according
to the Internal Affairs investigation, Ignacio had accessed
through the Police Department's database on three separate
occasions.  Id. at 25.

The Board issued the following conclusions of law:

1.  The above Findings of Facts are
incorporated into these Conclusions of Law.

2.  The party initiating a proceeding has the
burden of proof, including the burden of
producing evidence and the burden of
persuasion.  Further, the quantum of proof
shall be a preponderance of the evidence.
Hawai'i Revised Statutes, § 91-10(5).

3.  The requirement to evaluate a
probationary employee is set forth at Section
3-38(b)(1), entitled Probationary
appointment, Rules of the Department of Civil
Service, Title I - Rules of the Director,
Chapter 3, Subchapter 6, p. 3-17 (amended.

10

According to § 3-38(b) initial probation
shall be utilized as part of the examination
process to determine the employee's fitness
and ability for employment in the position
and the civil service.

4. [Ignacio] was terminated for multiple
violations of General Order 300.IV.D.  Based
on the [Internal Affairs] investigation,
Chief Kubojiri concluded [Ignacio] was not
credible, acted inappropriately, and
exercised poor judgment.

5.  The Board concludes that the Appellant
was treated fairly and impartially during the
[Internal Affairs] investigation.

6.  The Board concludes the decision of [the
Police Department] to terminate [Ignacio] was
not arbitrary or capricious.

7.  The Board concludes the decision of [the
Police Department] did not violate any civil
service laws, rules, or regulations in its
decision to terminate the initial probation
of [Ignacio] as a Police Officer I in [the
Police Department].

[8.] The Board finds [Kubojiri] was credible
on the points addressed in the above Findings
of Fact and these Conclusions of law.

<u>Id.</u>  The Merit Appeals Board denied Ignacio's appeal on March 28,

2011.  <u>Id</u>.  Ignacio filed the present action on August 24, 2011.

Compl., ECF No. 1.

**III.      STANDARD.**

Summary judgment shall be granted when "the pleadings,

the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan

12

<u>Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." <u>Miller</u>, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

        On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (quotation marks and brackets omitted).

13

IV.        ANALYSIS.

        A.    **Ignacio Does Not Establish That He Had More Rights Than an At-Will Employee.**

        Most of Ignacio's claims depend on his argument that he had a right to continued employment.  That is, Ignacio's claims are premised on the assertion that Ignacio was not an at-will employee.  Because Ignacio's status is determinative of much of this case, this court begins with that issue.

        Ignacio claims that his status as an employee who was not at-will was established by the CBA, the Internal Complaint Procedures, and the General Orders, all of which he alleges Defendants violated.

        Under Hawaii law, "the at-will [employment] doctrine prevails absent a collective bargaining agreement, a contractual provision, or a statutorily-conferred right" defining the employer-employee relationship.  Shoppe v. Gucci America, Inc., 94 Haw. 368, 383, 14 P.3d 1049, 1064 (2000).  Policies and manuals that an employer distributes to an employee can create an avenue for contractual recovery for an at-will employee when the employer guarantees "specific treatment in specific situations."  Id. (citing Kinoshita v. Canadian Pac. Airlines, 68 Haw. 594, 602, 724 P.2d 110, 117 (1986)).  For example, in Kinoshita, the Hawaii Supreme Court determined that an employer had created a situation "instinct with obligation" by presenting its employment

14

policies along with a cover letter stating that the policies constituted "an enforceable contract between us under [the] labour law of the state in which you work.  Thus your rights in your employment arrangement are guaranteed." Kinoshita, 68 Haw. at 599, 724 P.2d at 115.  Absent such a categorical "specific written guarantee[] of continued employment," however, the presumption that employment is at-will remains.  Shoppe, 94 Haw. at 383, 14 P.3d at 1064.

Ignacio says that he was not an at-will employee because the CBA, along with the Police Department's Internal Complaint Procedures and General Orders, created "substantive and procedural restrictions" that limited the Police Department's "discretion and right to terminate probationary employees." Opp'n at 12, ECF No. 90.  The court disagrees.

Clearly, Ignacio has no statutorily conferred right to employment with the Police Department.  Under Hawaii law, "no employee shall be entitled to membership in civil service until the employee has . . . [s]uccessfully completed the initial probation period required as part of the examination process to determine the employee's fitness and ability for the position." Haw. Rev. Stat. § 76-27(a).  The purpose of making the initial probation period a part of the examination process is to determine a probationary employee's "fitness and ability" for the position.  Haw. Rev. Stat. § 76-27(a)(1).  It is undisputed that

Ignacio failed the examination process during his probationary period.  Ignacio was therefore never legally entitled to membership in the civil service, and his employment status with the Police Department is not protected by the statutes that provide protections to civil service employees.

With respect to the CBA, because the employer here is a municipality, this case is not governed by section 301 of the Labor Management Relations Act, 29 U.S.C. 185.  Ayres v. IBEW, 666 F.2d 441, 444 (9th Cir. 1982) ("We decline to extend the coverage of section 301(a) to public employees without a clearer indication of congressional intent.").  Thus, Ignacio does not and cannot claim the protections of section 301, which, despite its express references to disputes by and against labor organizations, has been read to also encompass suits for "uniquely personal" rights by individual employees.  See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976); Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 511 (9th Cir. 1978).  By the same token, Ignacio is not subject to the preemptive effect of section 301, which would preclude this court from addressing the merits of any claim that Defendants have breached the CBA.  See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988).  However, that does not mean that Ignacio is free to bring to this court his claims that Defendants have breached the CBA by treating him as an at-will employee.

16

With the inapplicability of section 301, this court turns to the state law that governs Ignacio's claims under the CBA.

Under section 89-13(a)(8) of Hawaii Revised Statutes, it is a prohibited practice for a public employer "wilfully to . . . [v]iolate the terms of a collective bargaining agreement." Section 89-14 says that the Hawaii Labor Relations Board "shall have exclusive original jurisdiction over such a controversy," subject to "judicial review of decisions or orders of the board in prohibited practice controversies in accordance with section 377-9 and chapter 91." Haw. Rev. Stat. § 89-14. Nothing in the record suggests that Ignacio took this matter to the Hawaii Labor Relations Board. To the contrary, Defendants assert that Ignacio took no such action. Decl. of Diane A. Noda, ECF No. 92-2.

At most, Ignacio raised issues before the Merit Appeals Board, but that entity reviews matters subject to the Police Department's Internal Complaint Procedure, not to the CBA.

This court is therefore without authority to address any alleged violation of what Ignacio says are his rights under the CBA to be treated as something other than an at-will employee. Any rights the CBA conferred on Ignacio must be vindicated by the Merit Appeals Board, not this court. This court accordingly does not rely on the CBA as giving Ignacio more rights than an at-will employee. See Lee v. UPW, Local 646, 125 Haw. 317, 325, 260 P.3d 1135, 1143 (2011).

17

Neither the Internal Complaint Procedures nor the General Orders contain any language akin to that in _Kinoshita._ That is, although both documents outline various practices and procedures, neither set of provisions guarantees Ignacio continued employment if those procedures are not followed.

The Internal Complaint Procedures "establish uniform procedures by which the [Police Department] will respond to internal complaints from employees and members of the general public with regards to personnel actions." Internal Complaint Procedures, ECF No. 53-8. The Internal Complaint Procedures "apply to all employees and members of the general public who wish to file a complaint relating to . . . employment actions taken under any law, rule, regulation, or policy." _Id._ at section III.A.5. The Internal Complaint Procedures do not apply, however, to "other complaints which allege misconduct on the part of an employee of the police department." For those complaints, the applicable procedures are "as set forth in General Order No. 302, Disciplinary Action and Procedures." _Id._ at section III.B. To the extent the Internal Complaint Procedures apply, they govern only Ignacio's request for information from the Police Department after his termination. General Order No. 302 governs the handling of Ogi's allegations about Ignacio.

The relevant provisions of the Internal Complaint Procedures also provide that, "In presenting a complaint[,] the

18

individual shall be assured freedom from coercion,
discrimination, or reprisals." Id. at section IV.A.  The
Internal Complaint Procedures outline the various "steps" of the
complaint process, including time-sensitive deadlines.  See id.
at section VII.  For example, the Internal Complaint Procedures
provide: "Any relevant information in the possession of the
department, which withstand conflicting law on privacy interest
issues, needed by a complainant to investigate and process a
complaint, shall be provided to the complainant within five (5)
working days upon receipt of written request." Id. at section
IV.G.  All time limits outlined in the Internal Complaint
Procedures, however, "may be extended by mutual agreement between
the complainant and the appropriate department representative at
each step and shall be confirmed in writing." Id. at section
IV.F.

        With respect to the General Orders, Ignacio refers to
both General Order No. 300, "Standards of Conduct," and General
Order No. 302, which refers to "Disciplinary Action and
Procedures." See ECF Nos. 53-13, 53-14.  General Order No. 300
includes various rules subject to the proviso that the Chief of
Police can "alter, amend, revoke or repeal these Standards of
Conduct provided such action is consistent with State Laws,
County Ordinances and the Charter of the County of Hawaii." ECF
No. 53-13.  General Order No. 302 outlines various disciplinary

procedures and mechanisms for investigating complaints against members of the Police Department.   ECF No. 53-14.   Among other things, General Order No. 302 provides that complaints "shall be promptly and thoroughly investigated."   Id.   In addition, General Order No. 302 provides that the Chief of Police shall receive the file of the investigation when it is complete.   Id.

Neither the Internal Complaint Procedures nor the General Orders even suggest that any employee is protected from any decision if that decision is not reached in compliance with those provisions.   This court is therefore unpersuaded by Ignacio's assertions that these documents contractually precluded the Police Department from treating him as an at-will employee during his probationary period.

The court's determination that Ignacio was an at-will employee renders Counts I through VII unsustainable.   Those counts assume that Ignacio could not be fired if his employer violated the CBA, the Internal Complaint Procedures, and/or the General Orders.   The court, however, does not end its analysis with its conclusion that Ignacio was an at-will employee.   Even if Ignacio could enforce the protections of those documents, he does not show that they were materially violated.

**B.   Count I fails.**

In Count I, Ignacio asserts that the Police Department failed to follow its Internal Complaint Procedures when it

20

allegedly failed to timely provide Ignacio with "those documents, recordings and other things in order to investigate, process his Internal Complaint Procedure complaint and in order to defend again[st] the charges made against him in the Department's Complaint Report."  First Am. Compl. ¶ 47.  As the court noted earlier in this Order, Ignacio was an at-will employee, and the Internal Complaint Procedures are not a contract an at-will employee can enforce.

Even assuming a probationary employee could enforce the Internal Complaint Procedures, however, Ignacio does not demonstrate that the Police Department violated those procedures. According to the Internal Complaint Procedures, "relevant information in the possession of the department" that is "needed by a complainant to investigate and process a complaint, shall be provided to the complainant within five (5) working days upon receipt of a request," so long as the documents "withstand conflicting law on privacy issues."  Section IV.G, ECF No. 53-8. Ignacio first requested documents relating to his termination on May 19, 2010.  See ECF No. 59-33.  On June 2, 2010, the Police Department gave Ignacio "a copy of the recording of [his] May 6, 2010 interview," and stated, "At this time, the Department is unable to provide you with any other documents, recordings, or other things considered as part of the administrative

investigation concerning you pursuant to Hawai`i Revised Statutes §§ 92F-13 and 92F-22."   ECF No. 59-34.

Sections 92F-13 and 92F-22 exempt certain government records from statutory disclosure requirements.   Those exemptions cover records that implicate privacy concerns that cannot be disclosed without frustrating legitimate governmental functions or that relate to ongoing investigations against an individual. Those statutes do not, by their terms, prohibit disclosure; they instead provide that the enumerated documents need not be disclosed.   Nevertheless, the statutory provisions inherently suggest that disclosure would create problems (e.g., by frustrating an investigation).   Because Ignacio does not claim that the Police Department's reliance on the statutes was improper or unwarranted, the court rules that the Police Department was entitled to withhold documents under sections 92F-13 and 92F-22.

It is true, as Ignacio contends, that the Police Department did not respond within the five-day period defined by the Internal Complaint Procedures.   However, because even a timely response would not have meant that Ignacio would have received the requested materials, the tardiness could not have been the source of any injury to Ignacio.   The tardiness was, in fact, irrelevant to any claim Ignacio might bring.

C.    **Count II Fails.**

In Count II, Ignacio claims that the Police Department violated General Order 302.  First Am. Compl. ¶¶ 55-62.  Ignacio says that, in contravention of General Order 302, the Police Department failed to conduct a "thorough" investigation into his case, and that Chief Kubojiri terminated Ignacio before the investigation was complete.  Id. ¶ 57.

Even assuming General Order 302 constitutes a contract enforceable by Ignacio, Ignacio establishes no breach of General Order 302 based on an investigation that allegedly failed to be "thorough."  The Police Department's investigation considered information from a variety of sources, including Ogi's TRO, Ignacio's phone records, the Police Department's database, and interviews of at least thirteen witnesses.  Decl. of Alan Kimura ¶ 9, ECF No. 59-37.  By the time Internal Affairs completed its investigation on May 10, 2010, its report was 250 pages long. Kubojiri Decl. ¶ 16, ECF No. 59-38.  Ignacio identifies no specific shortcoming in the Police Department's investigation. His bare assertion that the investigation was not "thorough" is neither supported by the record nor sufficient to create a triable factual issue.

Ignacio's claim that Chief Kubojiri prematurely terminated him is similarly without merit.  Ignacio cites to the Merit Appeals Board's finding of fact that "Chief Kubojiri

testified that **the ongoing** criminal investigation was not a factor in his decision to terminate the Appellant's employment." First Am. Compl. ¶ 58 (emphasis in original).  But the criminal investigation into Ignacio's conduct was separate from the administrative investigation into whether Ignacio should be terminated.  <u>See</u> Kubojiri Decl. ¶ 14 (indicating that both an Internal Affairs investigation "<u>and a separate</u> criminal investigation were initiated").  The Internal Affairs investigation was completed on May 10, 2010.  ECF NO. 59-32. There is no evidence that the ongoing criminal investigation had any bearing on the Police Department's compliance or alleged noncompliance with General Order 302.

### D.   Count III Fails.

In Count III, Ignacio alleges that the Police Department failed to follow the CBA's requirement that he be given a written statement of the reasons for his termination. First Am. Compl. ¶¶ 63-90.  He says the only reason he was given was that he had committed a criminal act.  First. Am. Compl. ¶ 73.  He complains that he did not learn of additional reasons underlying his termination until he appealed to the Merit Appeals Board.  <u>Id.</u> ¶¶ 87-88.  None of these assertions is supported by the record.

First, the court repeats that the Merit Appeals Board is the sole forum with authority to consider an alleged CBA

violation.  However, because this appears to go to the issue of
whether Count III is meritorious rather than to this court's
subject matter jurisdiction, the court is not constrained from
further noting that Ignacio's assertion in Count III and in part
of Count IV that the Police Department violated Article 13.D.1 of
the CBA is untenable.  Article 13.D.1 provides, in relevant part,
that "when an employee is disciplined," both "[t]he employee and
the Union shall be furnished the reason(s) therefor in writing
including the allegations or charges, rule(s) or regulation(s)
upon which discipline or dismissal is based, on or before the
effective date of the discipline or dismissal."  CBA at 24.

     The Police Department provided both Ignacio and SHOPO
with the reasons for his termination before the effective date of
his dismissal.  See Police Department's Termination Letter to
Ignacio, ECF No. 53-6 (notifying Ignacio and SHOPO on May 10,
2010, that Ignacio would be terminated the following day for
conduct violating the Police Department's General Order
300.IV.D).  Ignacio's challenge to the reasons given for his
termination and his assertion that there were other grounds for
termination identified later do not establish a viable CBA
violation.  If whatever reason Ignacio was timely given was
sufficient to warrant termination, he was not injured by any
alleged failure to give a complete list of reasons.

According to Ignacio, "the only reason given by the Department for terminating Plaintiff was Chief Kubojiri's explicit finding . . . that Plaintiff's conduct was contrary to General Order 300.IV.D., *i.e.*, the commission of a criminal act." First Am. Compl. ¶ 73 (internal quotation marks omitted).

Although Count III purports to be based on a CBA violation, the alleged CBA violation is premised on an alleged violation of General Order 300.  Even assuming Ignacio may premise any claim on General Order 300, Ignacio establishes no violation of General Order 300.

General Order 300.IV.D provides:

> Officers and employees shall not commit any criminal act.  For the purpose of this section, it is not required that the member be convicted of a crime.  Acceptance of immunity from criminal prosecution, deferred acceptance of guilty pleas, deferred prosecution and other such dispositions shall be considered prima facie evidence that a criminal act was committed.

ECF No. 53-13.  Ignacio says that he has not been convicted of a crime, accepted immunity from criminal prosecution, had acceptance of a guilty plea deferred, or had any prosecution against him deferred.  First Am. Compl. ¶¶ 76-78.  Ignacio also states that at no material time "has there ever been any other 'such' disposition" involving him.  Id. ¶ 79.

Ignacio's reading of General Order 300 takes words out
of context.  The language Ignacio points to sets forth examples
of circumstances that may serve as evidence that a criminal act
was committed.  That language does not purport to be an
exhaustive list of such evidence.  General Order 300 makes it
clear that a criminal act may be committed even if it does not
lead to any judicial proceeding at all.

General Order 300.IV.D. states that an employee of the
Police Department "shall not commit any criminal act."  For the
purposes of this section, "it is not required that the member be
convicted of a crime."  ECF No. 53-13.  Chief Kubojiri was well
within his authority in terminating Ignacio based on the first
part of General Order 300.IV.D if Ignacio committed a criminal
act, even if Ignacio was never arrested, convicted, or sentenced
in that regard.  It is Ignacio's conduct, not the treatment of
that conduct, that is the focus of that provision.

Count III also alleges that it was only after he
appealed his case to the Merit Appeals Board that Ignacio learned
that Chief Kubojiri had concerns about Ignacio's credibility.  In
particular, Ignacio had denied knowing Hollowell, but the
Internal Affairs investigation revealed that Ignacio had used the
Police Department's database on three separate occasions to view
Hollowell's records.  See Board Report, ¶¶ 23-25, ECF No. 9-3.
It is not at all clear that dishonesty was an independent reason

27

for Ignacio's termination.  Kubojiri's credibility determination may instead have played a role in his conclusion that Ignacio had committed a criminal act, which was a termination reason undeniably communicated to Ignacio.

General Order No. 302 requires only that an employee's supervisor "be <u>guided</u>" by various procedures.  General Order No. 302, ECF No. 53-14.  The relevant procedure outlined in General Order 302 states:

> The member being disciplined shall be
> notified of the reason(s) in writing within
> 48 hours after the action is taken by
> delivering to the member the original copy of
> Complaint Report GO 302-B.

<u>Id.</u>  Ignacio was provided with a copy of the Complaint Report on a timely basis but says it was incomplete.  Notably, Ignacio identifies no provision stating that a Complaint Report violates General Order 302 if it does not include every single thought or word that passed through a decisionmaker's mind.  Because nothing in General Order No. 302 requires a Complaint Report to include all ancillary concerns, and because Ignacio does not deny having received the full Complaint Report, this court sees no evidence that the Police Department failed to follow General Order No. 302.

In summary, Ignacio does not establish that there are triable issues relating to Count III.

E.    **Count IV Fails.**

Count IV largely repeats Count III.  In Count IV,
Ignacio again alleges that the Police Department failed to timely
provide him with all the reason(s) for his termination as
allegedly required by the CBA, section 76-46 of Hawaii Revised
Statutes, and General Order Nos. 300 and 302.

The court has already addressed matters relating to the
CBA and General Order Nos. 300 and 302.  The court turns now to
the allegation in Count IV that the Police Department violated
section 76-46 of Hawaii Revised Statutes.  Section 76-46
provides:

> An appointing authority may discharge or
> demote any employee when the appointing
> authority considers that the good of the
> service will be served thereby.  Discharges
> may be made only for such causes that will
> promote the efficiency of
> government service.
>
> Demotions or discharges shall be in
> accordance with procedures negotiated under
> chapter 89 [Collective Bargaining in Public
> Employment] or established under chapter 89C
> [Public Officers and Employees Excluded From
> Collective Bargaining], as applicable.

There is no dispute that Chief Kubojiri terminated Ignacio
thinking "that the good of the service will be served thereby."
Id.  To the extent Ignacio is arguing that his termination
violated procedures under chapter 89, those procedures are set
forth in the CBA, which only the Merit Appeals Board may enforce.
To the extent Ignacio is relying on the Internal Complaint

Procedures and/or the General Orders in connection with Chapter 89C, this court has already found earlier in this order that Ignacio does not establish any triable issue in that regard.

### F.  Count V Fails.

In Count V, Ignacio alleges that, even after he was discharged, Chief Kubojiri "threatened and coerced Plaintiff in writing with further discipline, demotion and discharge."  First Am. Compl. ¶ 98.  Ignacio claims that "Chief Kubojiri's threat was grossly negligent, deliberately indifferent or intentional," or in violation of Civil Service Rules as well as section 76-42(a)(2) of Hawaii Revised Statutes.  Id. ¶ 99.

Ignacio's assertions that Chief Kubojiri violated the Civil Service Rules are unavailing.  First, it is undisputed that Ignacio was a probationary employee and was therefore never a member of the Civil Service; the Civil Service Rules did not apply to Ignacio.  Second, even if the Civil Service Rules had applied, Ignacio does not show that Kubojiri violated the rules.

Chief Kubojiri's second letter to Ignacio stated:

> An administrative investigation has been initiated as specified in the attached documents.

> Please review the documents, acknowledge receipt of the documents by your signature and return the signed originals via the inserted self addressed envelope to Sergeant Akira Edmoundson.  Keep the copy(s) for your record.

> You will have five (5) days upon receipt
> of this letter to respond in writing. If you
> decide not to respond to the alleged
> violations, this investigation will proceed
> without your statement.

ECF No. 59-31.  Attached to the letter were allegations relating

to behavior allegedly occurring while Ignacio was a police

officer but discovered only after he was terminated.  <u>See</u>

Kubojiri Decl. ¶ 20, ECF No. 59-38 ("After Mr. Ignacio was

terminated, the County cleaned out his locker and discovered

evidence which had not been properly secured and logged.  As a

result, an IA investigation was initiated.").  Chief Kubojiri

explained:

> Although Mr. Ignacio's probation was already
> terminated, it is standard procedure for the
> Police Department to investigate all acts of
> wrongdoing which occur while a person is
> employed with the department, even if the
> person no longer is employed.  This is
> particularly important if the individual
> filed a grievance or appeal in an attempt to
> be reinstated.  If the department failed to
> investigate and the person was reinstated,
> he/she would not be held accountable for the
> wrongdoing.

<u>Id.</u> ¶ 22.  Neither Chief Kubojiri's letter to Ignacio nor Chief

Kubojiri's explanation as to why the letter was sent appears

wrongful on its face or threatening.  Faced with nothing more

than Ignacio's assertion of wrongdoing, this court grants summary

judgment to Defendants on Count V.

### G.   Count VI Fails.

In Count VI, Ignacio asserts that the Police

Department's Internal Complaint Procedures and the CBA gave him a

right to "fairness," which the Police Department did not provide.

First Am. Compl. ¶¶ 102-07.

Count VI is yet another CBA claim that must be

addressed by the Merit Appeals Board, not this court.  In

addition, most of Count VI relies on matters already addressed by

this court in connection with Counts I to V.  The remaining basis

for Ignacio's claim that he was treated unfairly is the Police

Department's alleged failure to provide Ignacio with due process.

That matter is addressed in this court's discussion below of

Count IX.

### H.   Count VII Fails.

In Count VII, Ignacio claims that the Police

Department's policies, rules, and procedures transformed his

otherwise at-will employment status into employment that was not

at-will.  This court has already spoken to and rejected this

claim earlier in this order.

### I.   Count VIII Fails.

In Count VIII, Ignacio broadly alleges negligence,

asserting that the Police Department "owed Plaintiff a duty of

due care to Plaintiff, among others, to establish and maintain

written personnel policies which conform to applicable laws,

rules, policies, guidelines, procedures, and standards." First

Am. Compl. ¶ 121.  To prevail on a negligence claim, a plaintiff

must prove:

>           (1) A duty, or obligation, recognized by the
>           law, requiring the defendant to conform to a
>           certain standard of conduct, for the
>           protection of others against unreasonable
>           risks;
>
>           (2) A failure on the defendant's part to
>           conform to the standard required: a breach of
>           the duty;
>
>           (3) A reasonably close causal connection
>           between the conduct and the resulting
>           injury[;] and
>
>           (4) Actual loss or damage resulting to the
>           interests of another.

See Takayama v. Kaiser Found. Hosp., 82 Haw. 486, 498-99, 923

P.2d 903, 915-16 (1996) (quoting Knodle v. Waikiki Gateway Hotel,

Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (1987)).

        Even if this court were to rule that the Police

Department had the duty Ignacio describes, Ignacio presents no

evidence that the Police Department breached that duty.  He

points to nothing in written personnel policies violative of any

specific applicable law, rule, policy, guideline, procedure, or

standard.  Nor does he identify any missing personnel policy

required by law.  The court therefore grants summary judgment to

Defendants on Count VIII.

### J.   Ignacio's Constitutional Claims Fail.

Finally, in Counts IX and X, Ignacio also asserts that his constitutional rights were violated.  Because remedies for violations of federal constitutional rights are not provided for in the body of every constitutional provision, Congress enacted 28 U.S.C. § 1983 to provide remedies.  Although Ignacio never mentions § 1983, the court assumes that he seeks relief for alleged federal constitutional violations pursuant to that statute.

Ignacio claims in Count X that Defendants infringed upon his First and Fourteenth Amendment rights by threatening him "with further discipline, demotion and discharge" after he was terminated.[2]  First Am. Compl. ¶¶ 127.  Count X alleges that Ignacio's termination and Defendants' "threat" violated Ignacio's Fourteenth Amendment right to procedural due process by depriving him "of his right to liberty and/or property."  Id. ¶ 134.

Count IX rests on Chief Kubojiri's letter of June 23, 2010, which discussed the Police Department's second Internal Affairs investigation.  Ignacio says this "constituted an abuse

---

[2] Ignacio's First Amended Complaint also alleged a violation of his Fifth Amendment rights.  After Defendants pointed out that the Due Process Clause of the Fifth Amendment applied only to actions by the federal government, Ignacio withdrew his Fifth Amendment claim.  See Opp'n at 26 ("Plaintiff's erroneous reference to the Fifth Amendment within Count IX is hereby acknowledged, however, Plaintiff's substantive due process claim made under the Fourteenth Amendment is reserved and not withdrawn.").

and misuse of power and was made in direct response and retaliation to Plaintiff's pursuit of his First, Fifth, and Fourteenth Amendment rights to property, liberty, free speech and procedural due process." Id. ¶ 129.

In evaluating Ignacio's First Amendment claim, the court considers: (1) whether Ignacio spoke on a matter of public concern; (2) whether Ignacio spoke as a private citizen or public employee; (3) whether the speech was a substantial or motivating factor in the adverse employment action; (4) whether the Police Department had an adequate justification; and (5) whether the Police Department would have taken the adverse employment action absent the speech. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 961 (9th Cir. 2011). The plaintiff has the burden of proof, and a plaintiff's failure to satisfy one of these steps concludes the court's inquiry. See Huppert v. City of Pittsburg, 574 F.3d 696, 703 (9th Cir. 2009).

Ignacio's First Amendment claim fails multiple steps. First, Ignacio's Internal Complaint seeking reinstatement with the Police Department, ECF No. 59-29, was not a matter of public concern. The court's inquiry could end here. However, the court acknowledges that, because Ignacio's Internal Complaint was filed after he was terminated, he must have been speaking as a private citizen, not as a public employee. He therefore was not subject to such restrictions as a public employee may have on his or her

speech rights.  See Garcetti v. Ceballos, 547 U.S. 410 (2006)
(statements by public employees made pursuant to official duties
not protected by First Amendment).  Unfortunately for Ignacio,
the remaining steps work against him.  That is, having been
terminated before he filed the Internal Complaint, he cannot
maintain that his Internal Complaint was a motivating factor in
the Police Department's decision to fire him.  Nor is there any
reason to treat the internal investigation leading to his
termination as an adverse action under the circumstances of this
case.

    And nothing in the record suggests that, had Ignacio
not filed his Internal Complaint, he would be better off today.
He was, after all, fired even before that filing.

    As for the second Internal Affairs investigation, not
only did the Police Department have a legitimate reason for
conducting it, nothing about it involved speech by Ignacio, much
less speech on a matter of public concern.  Nothing about the
second investigation, which concerned evidence that should have
been properly logged, could have constituted an adverse
employment action, because Ignacio was not even employed by the
Police Department at the time of the second investigation.  See
Kubojiri Decl. ¶ 22, ECF No. 59-38.

    Ignacio also alleges that Defendants deprived him of
his procedural and substantive due process rights under the

Fourteenth Amendment. <u>See</u> First Am. Compl. ¶¶ 127-37. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 569 (1972). To implicate the Fourteenth Amendment's substantive protections, the interest at stake must be "within the Fourteenth Amendment's protection of liberty and property." <u>Id.</u> at 570.

A probationary police officer does not have a property interest in continued employment. The kind of procedural and substantive due process rights Ignacio describes simply did not attach to his job. Therefore, he is not entitled to either procedural or substantive due process in that connection. <u>See Clark v. City of Oakland</u>, 385 F. App'x 665, 666 (9th Cir. 2010) (probationary police officer's Fourteenth Amendment claim failed because there was no property interest in continued employment); <u>Whitworth v. Regents of the Univ. of California</u>, 274 F. App'x 559, 564 (9th Cir. 2008) (holding that probationary employee had no property interest in continued employment); <u>Duke v. Langdon</u>, 701 F.2d 768, 769 (9th Cir. 1983) (concluding that probationary employee had no property interest in continued employment and was not entitled to continued employment). Both the procedural and the substantive prongs of Ignacio's Fourteenth Amendment claim fail as a matter of law.

V.       **CONCLUSION.**

For the foregoing reasons, Defendants' motion for summary judgment on all claims, ECF No. 57, is granted, and all three of Plaintiff's motions for partial summary judgment, ECF Nos. 52, 54, and 56, are denied.

The Clerk of Court is directed to enter judgment for Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, March 27, 2013.



    /s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District
Judge

Terence Ignacio v. County of Hawaii, et al., Civ. No. 11-00516 SOM/BMK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS AND DENYING PLAINTIFF'S THREE MOTIONS FOR PARTIAL SUMMARY JUDGMENT.